**NOT FOR PUBLICATION**                                    **CASE CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ : | |
| ROXANNE D. ANDERSON, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. 07-1680 (JAP) |
| v. : | |
| : | |
| COMMISSIONER OF SOCIAL SECURITY, : | |
| : | **OPINION** |
| : | |
| Defendant. : | |
| _____: | |

       This matter comes before the Court pursuant to Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. § 301 *et seq.*  Plaintiff, Roxanne D. Anderson ("Plaintiff" or "Ms. Anderson") seeks review of the Defendant, Commissioner of the Social Security Administration's ("Defendant" or "Commissioner") final decision denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSIB"). The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides the matter without oral argument pursuant to Fed. R. Civ. P. 78.  The issue presented is whether the Commissioner's decision to deny Plaintiff's application for DIB and SSIB is supported by substantial evidence.  Because the record provides substantial evidence supporting the Commissioner's decision that Plaintiff was "not disabled" and, thus, not entitled to benefits, the Court affirms the Commissioner's decision.

## I.    Background

### A.    *Plaintiff's Personal and Medical History*

Plaintiff was born on April 3, 1969, and is currently a thirty-eight year old woman.  Ms. Anderson has a high-school education and began college courses in September 2000.  At the time of Plaintiff's Administrative Hearing ("Hearing"), she was in school three to four days per week and had completed three years of college, but needed to repeat two classes.

Ms. Anderson has experienced several traumatic events throughout her life.  Plaintiff's father was murdered when she was five years old and her mother passed away when Plaintiff was eighteen years old.  Administrative Record ("AR"), 457.  Plaintiff's older sister has schizophrenia and has been in and out of hospitals since she was seventeen years old.  AR, 435. As a child, Ms. Anderson reported that she was physically, sexually, and emotionally abused. AR, 425.  Currently, she lives with an ex-spouse with whom she has a complicated sexual relationship.  AR, 298.

Plaintiff stopped working on December 14, 2001 and has held a series of prior jobs.  Her last position of employment was a technical assistant for the New Jersey Department of Personnel, where she worked for four years monitoring field employees and performing several human resources functions such as posting job listings.  AR, 502-03, 526.  Prior to this, for twelve years, Plaintiff worked in the New Jersey Department of Treasury, Division of Pensions and Benefits, Cash Receipts and Disbursements Section where her responsibilities included accounting/bookkeeping, coordinating departments, and supervising six employees.  AR, 524-25, 532.  Besides employment with the State, Ms. Anderson also worked at May Department Store,

Burlington Coat Factory, J.C. Penny, Sears, WaWa, and the United States Postal Service.  AR,

503-04.  Plaintiff ceased working on December 14, 2001 due to her physical and mental

conditions and since then, she has not engaged in any substantial gainful activity.  AR, 490.

Plaintiff alleged she suffered from depression, extreme loss of energy, withdrawal, confusion,

anger, and fear, which made it difficult for her to continue working.  AR, 490-91.  Additionally,

Plaintiff testified at her hearing that in the year prior to December 2001, she was sexually

harassed by her employer, robbed, raped, a victim of an attempted murder, homeless, and lost a

child in a car accident.  AR, 491.  Plaintiff never filed a sexual harassment complaint.  AR, 512.

Plaintiff's records indicate that she has low energy levels, is emotional, and experiences

panic attacks, which lead to exhaustion.  AR, 492.  Plaintiff claims that her panic attacks are

caused by her income status, living in an abusive environment, and being homeless.  Pl. Brief,

pg. 4.  A typical day for Plaintiff involves waking up around 8:30 a.m., cleaning, resting, running

errands such as grocery shopping, and then attending evening classes four days per week.  AR,

497.  At her hearing, Plaintiff testified to having trouble falling asleep and then getting up in the

morning.  AR, 495. Plaintiff has expressed that she fears going to work because of the sexual

abuse she experienced from her previous job and is weary of how her energy level and depression

will affect her ability to be consistent with an employer.  AR, 494.

### i.     *Plaintiff's Medical History*

Plaintiff's medical history is extensive and complicated.  Plaintiff testified that she has

been diagnosed with hepatitis C, bipolar disorder, and post traumatic stress syndrome.  AR, 492.

Currently, Plaintiff receives medical treatment from Dr. Shinefeld who is located in Hamilton,

New Jersey.  AR, 506.  To help with her medical conditions, Plaintiff takes a variety of prescription drugs, which include Neurontin, Lexapro, Seroquel, Copidas, Pegusus, and Lupagine.  AR, 511-12.

Plaintiff has seen a number of psychiatrists in the past few years.  On March 11, 2002, Dr. Alvaro Argueta examined Plaintiff and noted that she had a depressed affect and mood.  While her perception was normal and she was appropriately dressed, clean, and presentable, her speech was slow in rate and flow.  AR, 458.  Dr. Argueta diagnosed Plaintiff with a major depressive disorder and a Global Assessment Functioning ("GAF") of 165, which indicates mild symptoms or some difficulty in social, occupational, or school functioning.  *Id.*; Def. Brief, pg. 5.

Following Dr. Argueta, Plaintiff went to Capital Health System, a psychiatric center, where she received treatment from August 30, 2002 through January 13, 2003.  AR, 169-213.  During Plaintiff's initial assessment, her appearance was appropriate, neat, and clean, and her behavior was relaxed.  AR, 200.  Plaintiff spoke fast, cried during the assessment and appeared worried, and stressed, but cooperative.  *Id.*  Her concentration was normal as was her thought process, and Plaintiff was oriented to all spheres, had no memory problems, and adequate judgment and insight.  AR, 200-01.  After that first assessment, Plaintiff had a psychiatric evaluation and received medication monitoring.  AR, 169-213.  Initially, Plaintiff was not compliant with all of her medications, but once she was, she reported a positive response to them.  AR, 178.

On December 26, 2002, Dr. Perry Shaw examined Plaintiff.  Plaintiff provided Dr. Shaw with a description of her day-to-day life as well as her personal background.  AR, 163-66.  Dr. Shaw noted in his report that Plaintiff was neither elated nor depressed, had normal psychomotor

behavior, did not hallucinate, and was not delusional, tangential, or circumstantial.  AR, 167.

Plaintiff could maintain eye contact with Dr. Shaw and was oriented to person, place, and time.

*Id.*  Plaintiff's intelligence was average, with unimpaired memory, intact judgment,

concentration, and had a sense of humor.  *Id.*  Dr. Shaw, in his principal diagnosis, reported that

Plaintiff was capable of handling benefits on her own behalf and diagnosed her with adjustment

disorder mixed with anxiety and depressed mood as well as and borderline personality disorder.

*Id.*

       Following her treatment at Capital Health System, Plaintiff was admitted to the Princeton

House Partial Hospital for psychiatric treatment on April 20, 2004.  AR, 273.  There, she

received individual and group psychotherapy, education and training skills groups, and art

therapy.  AR, 273-328.  In a meeting with her primary therapist, Jeanne Cantrell, Ph.D., on June

17, 2004, Plaintiff indicated that her life was threatened by another member in her art therapy

group.  AR, 327-38.  Plaintiff stated that the member said, "When I can't make something work,

I kill it."  *Id.*  Plaintiff interpreted the member's statement as a threat on her life and also voiced

her dissatisfaction with the suggestions her therapists were making for her treatment.  *Id.*

Plaintiff appeared distracted, easily irritable and agitated, and hyperverbal.  *Id.*  She did not want

to be switched to a different group nor did she want to return to the program.  *Id.*  In June 2004,

Plaintiff discontinued her treatment at Princeton House.

       On June 28, 2004, Plaintiff underwent an operation on her foot at Robert Wood Johnson

University Hospital in Hamilton, New Jersey.  AR, 330-34.  Plaintiff had also been receiving

care from a chiropractor for a back problem known as facet syndrome beginning in May 2002

through March 2005.  AR, 336-37.  On November 3, 2004, Dr. Mariam Z. Maniya reported that

she had been treating Plaintiff for the past five months, indicating Plaintiff began seeing her sometime in June 2004.  AR, 350.  Dr. Maniya diagnosed Plaintiff as having bipolar disorder and depression.  *Id.*  Between June 17, 2004 and March 23, 2005, Dr. Maniya noted that Plaintiff complained of a fungal infection, upper respiratory infection, rectal bleeding, sinus pressure, post nasal drip, and was diagnosed with hepatitis C.  AR, 459-67.  Additionally, Plaintiff underwent a liver biopsy on October 8, 2004, which confirmed chronic hepatitis.  AR, 463.

On March 23, 2005, Dr. Maniya had Plaintiff complete a physical capacity evaluation. The results of the test indicated that Plaintiff was able to sit for eight hours, stand for five hours, and walk for five hours within an eight-hour work day.  AR, 351.  Plaintiff could occasionally lift twenty-one to fifty pounds and there was no limitation in use of her feet for operation of controls. *Id.*  Dr. Maniya assessed that Plaintiff could not crawl, but could occasionally bend, squat, climb, and reach above shoulder level.  *Id.*  Plaintiff was not restricted from activities involving heights, machinery, driving, temperature changes, or dust, fumes, and gases.  *Id.*

### ii.    *Medical Testimony*

Dr. Richard Cohen, a specialist in psychiatry, testified at the initial hearing on February 24, 2005, and diagnosed Plaintiff as having bipolar and borderline personality disorder as well as unstable relationships and erratic behavior.  AR, 514.  Dr. Cohen, however, determined that Plaintiff is able to function independently, engages in social activities, and her mental status is above normal.  Dr. Cohen found that Ms. Anderson's ability to engage in activities of daily living is mildly impaired, her social functioning is moderately impaired, and her concentration, persistence, and pace mildly impaired.  AR, 515.  He noted that Plaintiff cooks, shops, and can

drive a car, which demonstrates that she can function independently.  *Id.*  Plaintiff can socialize

with others, as she's able to do group projects with fellow students, but she does have some

intense, unstable interpersonal relationships.  *Id.*  Dr. Cohen testified that Plaintiff did not meet

any of the criteria in the Listed impairments described in Appendix 1 of the Code of Federal

Regulations, 20 CFR, Part 404, Subpart P, Appendix 1.  AR, 516.  Specifically, Plaintiff did not

meet the B criteria listings for 12.04, Affective Disorders, or 12.08, Personality Disorders.  *Id.*

In addition to Dr. Cohen's testimony, Plaintiff had a supplemental hearing for the

purposes of taking the testimony of a vocational expert, Mr. Mitchell Schmidt.  AR, 520.  Mr.

Schmidt testified that Plaintiff's past employment positions for the State of New Jersey were

sedentary and skilled jobs.  AR. 524-27.  Mr. Schmidt then testified that a hypothetical thirty-six

year old person with traits similar to Plaintiff would not be able to perform the type of skilled

work Plaintiff had done in the past.  AR 528-29.  According to Mr. Schmidt, however, there are

jobs that Plaintiff could perform within her current physical and mental limitations such as a

router (DOT Code 222.587-038), swatch clerk (DOT Code 222.587-050), or a garment sorter

(DOT Code 222.687-014).  AR, 529.

B.    *Procedural History*

On June 26, 2002, Plaintiff protectively filed applications for DIB and SSIB payments.

Plaintiff alleged that as of December 14, 2001, she was unable to work due to depression and

bipolar disorder.  The claims were initially denied, but upon reconsideration, a hearing was

granted.  Plaintiff's first hearing was conducted on February 24, 2005 before an Administrative

Law Judge ("ALJ") in Voorhees, New Jersey.  At this hearing, Plaintiff was represented by

counsel and testified on her own behalf.  Dr. Cohen also testified.

A supplemental hearing was held on June 9, 2005, before the same ALJ.  Prior to the hearing, Plaintiff's counsel withdrew his representation and Plaintiff appeared on her own behalf. Mr. Schmidt, an impartial vocational expert, testified at the supplemental hearing.  After the hearing, the record was held open for the submission of additional evidence from Dr. Zahid I. Baig.  The evidence was received and entered into the record.

The issues before the ALJ included: 1) whether Plaintiff was entitled to a Period of Disability and DIB under Sections 216(i) and 223 of the Social Security Act, and 2) whether Plaintiff is disabled under Section 1614(a)(3)(A) of the Act.  On July 7, 2005, the ALJ submitted his decision to Plaintiff.  Based on the medical and other evidence presented at the hearing, the ALJ determined that Plaintiff could not return to her past relevant work; however, Plaintiff could find work in other job categories.  AR, 24.  Therefore, the ALJ concluded that Plaintiff is not disabled and is ineligible to receive DIB and SSIB payments.

On April 10, 2007, Plaintiff filed the instant action with this Court challenging the ALJ's decision.  Specifically, Plaintiff argues that the ALJ's denial of benefits was not based on substantial evidence and that she has set forth a prima facie showing of disability that the Defendant has failed to overcome.  Plaintiff claims that the Defendant has failed to meet his burden in establishing the availability of alternate gainful employment.  Alternatively, Plaintiff argues that the Defendant violated the Third Circuit precedent established by *Wallace v. Sec'y of Health & Human Services*, 722 F.2d 1150 (3d Cir. 1984), in relying upon improper vocational testimony regarding the transferability of job skills.  The Defendant opposes the appeal, arguing that the ALJ's decision was supported by substantial evidence.

II.     **Discussion**

A.     _Standard of Review_

The standard under which the District Court reviews an ALJ decision is whether there is substantial evidence in the record to support the ALJ's decision.  _See_ 42 U.S.C. § 405(g); _Plummer v. Apfel_, 186 F.3d 422, 427 (3d Cir. 1999).  "[M]ore than a mere scintilla," substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  _Richardson v. Perales_, 402 U.S. 389, 401 (1971).  The inquiry is not whether the reviewing court would have made the same determination, but, rather, whether the Commissioner's conclusion was reasonable.  _See Brown v. Bowen_, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence, therefore, may be slightly less than a preponderance.  _See Hanusiewicz v. Bowen_, 678 F. Supp. 474, 476 (D.N.J. 1988).

The reviewing court, however, does have a duty to review the evidence in its totality.  _See Daring v. Heckler_, 727 F.2d 64, 70 (3d Cir. 1984).  As such, "a court must take into account whatever in the record fairly detracts from its weight."  _Schonewolf v. Callahan_, 972 F. Supp. 277, 284 (D.N.J. 1997) (internal quotations omitted).  The Commissioner has a corresponding duty to facilitate the court's review:  "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  _Ogden v. Bowen_, 677 F. Supp. 273, 278 (M.D. Pa. 1987).  As the Third Circuit has instructed, a full explanation of the Commissioner's reasoning is essential to meaningful court review:

"Unless the [Commissioner] has analyzed all evidence and has sufficiently

> explained the weight he has given to obviously probative exhibits, to say that
> his decision is supported by substantial evidence approaches an abdication of
> the court's duty to scrutinize the record as a whole to determine whether
> the conclusions reached are rational."

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978).  Nonetheless, the district court is not

"empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."

*Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

        B.        <u>Establishing a Disability Under the Act</u>

        Plaintiff's eligibility for DIB and SSIB is governed by 42 U.S.C. §§ 423 and 1382.  A

claimant is eligible for DIB and SSIB if she meets the disability period requirements of 42 U.S.C.

§ 416(I), and demonstrates that she is disabled based on an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A person is

disabled for these purposes if her physical or mental impairments are "of such severity that [she]

is not only unable to do [her] previous work, but cannot, considering [her] age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the

national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

        Social Security regulations set forth a five-step, sequential evaluation procedure to

determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520.  For the first two steps, the

claimant must establish (1) that she has not engaged in "substantial gainful activity" since the

onset of her alleged disability, and (2) that she suffers from a "severe impairment" or

"combination of impairments." 20 C.F.R. § 404.1520(a)-(c). Given that a claimant bears the burden of establishing these first two requirements, the failure to meet this burden automatically results in a denial of benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).

If the claimant satisfies her initial burdens, the third step requires that she provide evidence that her impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments"). *See* 20 C.F.R. § 404.1520(d). Upon such a showing, she is presumed to be disabled and is automatically entitled to disability benefits. *Id*. If she cannot so demonstrate, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" ("RFC") sufficiently permits her to resume her previous employment. *See* 20 C.F.R. § 404.1520(e). RFC is defined as "that which an individual is still able to do despite limitations caused by his or her impairments." 20 C.F.R. § 404.1520(e). If the claimant is found to be capable of returning to her previous line of work, then she is not "disabled" and not entitled to disability benefits. 20 C.F.R. § 404.1520(e). Should the claimant be unable to return to her previous work, the analysis proceeds to step five. To determine the physical exertion requirements of work, jobs are classified as sedentary, light, medium, heavy, and very heavy.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. *See* C.F.R. § 404.1520(f). If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits. *Yuckert*, 482 U.S. at 146-47 n.5.

C.    The ALJ'S Decision Was Based on Substantial Evidence

-11-

The ALJ applied the facts from the record to that five-step analysis to conclude that Plaintiff is not entitled to either DIB or SSIB.  Initially, at the first step, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of her disability.  AR, 24.  Next, turning to the second step of the analysis, the ALJ concluded that Plaintiff has suffered from a severe combination of impairments, including bipolar syndrome, personality disorder, and hepatitis C.  AR, 25.  To reach that result, the ALJ considered Plaintiff's entire record, including her complete medical history and psychiatric reports.  *Id.*

Nevertheless, upon reaching the third step, the ALJ found that Plaintiff did not demonstrate that any of those impairments or combination of those impairments meets or medically equals one of the listed impairments in the Listing of Impairments.  *Id.*; *see* 20 C.F.R. § 404.1520(d).  In particular, the ALJ took note of Listings 5.05 (Chronic Liver Disease), 12.04 (Affective Disorders), and 12.08 (Personality Disorders).  *Id.*  Dr. Cohen concluded that although Plaintiff suffered from bipolar disorder and compulsive personality disorder, her mental conditions did not meet or equal the criteria in Listings 12.04 and 12.08.  In considering Dr. Cohen's testimony and findings, and noting that there was no objective evidence in the record to support a finding that Plaintiff's condition met or equaled the Listings' requirements, the ALJ agreed with Dr. Cohen's testimony that the "severity of the claimant's condition does not meet or equal Listings 12.04 and 12.08."  *Id.*

Additionally, the ALJ found that no treating or examining physician recorded findings "equivalent in severity to the criteria of any Listed impairment."  *Id.*  Furthermore, the ALJ considered the opinion of the State Agency medical consultants who evaluated Plaintiff's conditions at the initial and reconsideration stage of the administrative review process and reached

-12-

the same conclusion as Dr. Cohen — that Plaintiff's impairments did not meet any of the Listed criteria.

Next, in order to determine whether Plaintiff met steps four and five, the ALJ made specific findings, based on the record, of Plaintiff's RFC.  Specifically, the ALJ concluded that Plaintiff's

> "[RFC] to perform the exertional demands of medium work, or work which requires maximum lifting of 50 pounds and frequent lifting of up to 25 pounds. The claimant's capacity for medium work is diminished by significant additional limitations as she is able to lift/carry twenty-five pounds frequently and fifty pounds occasionally; has no restriction in sitting; is able to stand for five hours in an eight hour workday and one hour continuously; can walk for five hours in an eight hour workday and one hour continuously; can occasionally climb stairs, and can occasionally relate to co-workers, the general public, and supervisors."  AR, 29.

Although Plaintiff asserted that she is severely impaired, the ALJ concluded otherwise.   This conclusion was based on the totality of the record, which included Plaintiff's statements, testimony, and medical opinions from the treating sources or other reliable medical sources. Moreover, the assessment of Plaintiff's treating physician, Dr. Maniya, was consistent with the other substantial evidence in the record and was "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  AR, 32.

Plaintiff argues that she is disabled; however, merely because Plaintiff states that she is "disabled" or "unable to work" is not enough to prove a disability and cannot be considered medical opinion.  Rather, these are administrative findings dispositive of a case and these issues are reserved to the Commissioner.  As such, opinions on these issues cannot be given controlling weight, "but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence."  *Id.*

The ALJ gave little weight to the assessments of Dr. Ye and Dr. O'Connor for sound reasons.  Upon review of Dr. Ye's findings, the ALJ noted that the doctor did make some favorable findings as to Plaintiff's condition and ability to work at a regular job.  The ALJ, however, determined there was a "lack of objective clinical findings to support the degree of limitation opined by Dr. Ye" and that Dr. Ye's findings were contradicted by other doctors' findings and inconsistent with Plaintiff's "self-reported activities of daily living."  AR, 33.  Moreover, the ALJ noted that Dr. O'Connor's findings that Plaintiff is "totally and permanently disabled and no longer able to perform her job" was "clearly at odds with Ms. Anderson's ability to maintain succesful enrollment in a college curriculum involving network engineering technology."  *Id.*  Because Dr. O'Connor failed to cite specific findings to support his conclusion or reference to any functional limitations of Plaintiff in his treatment notes, the ALJ gave little weight to his determinations.

The ALJ considered Plaintiff's capacity to function in four relevant spheres: 1) activities of daily living; 2) social functioning; 3) concentration, persistance or pace; and, 4) episodes of decompensation.  After reviewing and considering all of the issues and factors, the ALJ concluded that

> "[Plaintiff] demonstrates a mild degree of limitation in the activities of the daily living area of functioning; a moderate degree of limitation in the social functioning area of functioning; a mild degree of limitations in concentration, persistence, and pace area of functioning; and has no episodes of decompensation."  AR, 34.

The ALJ questioned Plaintiff's credibility and concluded that while he believed that Plaintiff did have "some symptoms and limitation of function, it is not to the extent that the claimant alleges."  AR, 35.  Based on the findings as to Plaintiff's RFC, the ALJ, at step four, found that Plaintiff is

-14-

unable to perform his past relevant work as a supervisor of accounting clerks because that occupation "required more than occasional interaction with co-workers, supervisors, and the general public." AR, 36.

Next, the ALJ determined that "a finding of 'not disabled' may be reached within the framework of the [Medical-Vocational Rule]." AR, 38. Ultimately reaching the final step, the ALJ found that, considering Plaintiff's "age, education, work experience, and [RFC]" and the vocational expert's testimony, there are "a significant number of jobs existing in the regional or national economy that the claimaint can perform." *Id.* The ALJ determined that Plaintiff was "able to make an adjustment to work" in "unskilled occupations recognized by the Medical Vocational Guidelines...which involved basic repetitive tasks" and, thus, a finding of "not disabled" was appropriate under the Medical Vocational Guidelines. *Id.* Accordingly, the ALJ concluded that Plaintiff is not entitled to either DIB or SSIB under the SSA.

Plaintiff now raises three main challenges to the ALJ's Decision: (1) that the ALJ failed to properly determine Plaintiff's RFC; (2) that the ALJ failed to properly evaluate and wiegh the medical evidence of record; and, (3) that the ALJ failed to develop the record properly.

### 1.    The ALJ Properly Determined Plaintiff's RFC.

Plaintiff first argues that the ALJ improperly determined Plaintiff's RFC when deciding whether Plaintiff's limitations prevented her from performing work. Plaintiff asserts that the ALJ failed to conduct a "function-by-function" assessment of the abilities listed in 20 CFR 416.945 and 20 CFR 404.1545, especially the mental abilities, including the ability to "deal work pressures in a work setting." Pl. Brief, pg. 12-13.

In rendering his decision, the ALJ did perform a function-by-function analysis in regards to Plaintiff's RFC.  While the ALJ may not have categorized his analysis by each function, his decision clearly evidences that he considered Plaintiff's medical record in relation to each of her functional capacities.  Moreover, the ALJ weighed Plaintiff's "mental impairment;" indeed, the ALJ addressed the "[Plaintiff's] capacity to function in the following four relevant spheres: (a) 'Activities of Daily Living'...(b) 'Social Functioning'...(c) 'Concentration, Persistance or Pace'...and (d) '*Episodes of Decompensation*.'"  AR, 33 (emphasis added).  Based on her medical record, the ALJ concluded that Plaintiff has a mild degree of limitation on her social life and concentration, persistence or pace, a moderate limitation in social functioning, and no episodes of decompensation.  AR, 34.  Therefore, the ALJ properly considered Plaintiff's mental limitations when determining whether Plaintiff would be capable of performing other work.

Plaintiff's contention that the ALJ did not address Plaintiff's ability to work, in light of her limitation of only being able to occasionally relate to co-workers, supervisors, and the general public is unfounded.  At the hearing, the ALJ specifically asked the vocational expert whether a person who could never relate to people would be able to work.  The vocational expert testified that would not be possible.  Plaintiff, however, is not a person who can never relate to people.  On the contrary, Plaintiff has shown by her own actions, such as attending classes and working in groups with her classmates, that she is capable of limited interaction with people.  AR, 499.  The descriptions of the jobs the vocational expert recommended Plaintiff could handle - router, garment sorter, or swatch clerk - specify that "people" contact, such as taking instructions and helping,  is "not significant;" thus, it was proper that the ALJ determined Plaintiff was able to hold these jobs based on her social limitations.

-16-

Further, Plaintiff argues, that the ALJ's RFC assessment failed to consider "the State Agency's own findings from the Psychological Consultant in Exhibit 6F with respect to the limitations caused by the mental impairment." Pl. Brief, pg. 13. The Court disagrees. The ALJ gave fair weight to the State Agency consultant's psychological assessment of Plaintiff. *See* AR, 30. Additional medical evidence, however, was received after the State Agency doctors made their evaluation and because those doctors did not hear Plaintiff's testimony, the ALJ properly decided that Plaintiff's impairments were more limiting than the State Agency concluded. AR, 35.

Lastly, Plaintiff contends that the ALJ failed to apply Social Security Ruling 85-15 ("SSR 85-15") when determining Plaintiff's ability to handle work stress, even in a low-stress job. SSR 85-15 recommends the use of a medical expert in cases where the stress of a claimant is an issue. Here, the ALJ considered the testimony of Dr. Cohen, who reviewed Plaintiff's records and listened to her testimony, when determining whether Plaintiff's stress limited her abilities. Although Plaintiff's assessment by the Princeton House in April 2004 indicates that Plaintiff wanted to learn "stress management," there are no notations of work limitations due to stress. AR, 269. Additionally, Plaintiff was directly asked at her hearing how she was dealing with stress, to which she replied, "Getting better. I'm learning to stop fighting stressful situations, I'm learning to pick my fights." AR, 492. Furthermore, Dr. Cohen testified that although Plaintiff had mental impairments, she did not have any stress-related restrictions. AR, 516. Therefore, when the ALJ posed the hypothetical situations to the vocational expert, he correctly did not include a limitation due to stress because there is no evidence in the record of any such limitation.

2.      **The ALJ Failed to Properly Evaluate and Weigh the Medical Evidence**.

Plaintiff argues that the ALJ did not consider all relevant evidence in rendering his decision.  Specifically, Plaintiff claims that the ALJ did not properly weigh Dr. Argueta's medical assessment from October 22, 2002.  The Court disagrees.  Merely because the ALJ did not recite every finding Dr. Argueta made does not mean that the ALJ improperly considered his assessment.  An "ALJ must consider all relevant evidence when determining an individual's [RFC] in step four (citations omitted).  That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitation by others;" however, an ALJ need not "make reference to every relevant treatment note in a case where the claimant...has voluminous medical records."  *Fargnoli v. Halter*, 247 F.3d 34, 41-42 (3d Cir. 2001).  The ALJ, as fact finder, need only "consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."  *Id.* at 42.  Here, the ALJ properly considered Dr. Argueta's assessment.  The ALJ's decision makes numerous references to Dr. Argueta's assessment and appears to have considered the doctor's evaluations in making his final decision about Plaintiff's RFC.

Plaintiff next argues that improper weight was given to the treatment notes from Capital Health System and that the ALJ misconstrued Plaintiff's treatment notes from Princeton House. The Court does not find these allegations to be true.  The ALJ specifically discussed Plaintiff's progress notes from Capital Health System between August 30, 2002 and January 13, 2003 in his decision, *see* AR, 29, and noted her complaints of anxiety and depression at the facility.  The ALJ

did not ignore findings that Plaintiff suffered from mental illnesses such as bipolar disorder or depression. AR, 25. The Court does not find that the ALJ gave improper weight to the treatment notes. Furthermore, the ALJ did not misconstrue Princeton House's treatment notes concerning Plaintiff. On the contrary, the ALJ made particular reference of them in his discussion about the diagnosis of major depressive disorder and post-traumatic stress disorder. At no point in the discussion did the ALJ make light of the diagnosis or treatment notes nor did he draw any conclusions from Plaintiff's withdrawal of treatment from Princeton House.

Lastly, Plaintiff claims that the ALJ improperly rejected the opinions of Dr. Ye and Dr. O'Connor. The Court finds that the ALJ did not reject either medical opinion, but correctly afforded them little weight in his overall decision, in accordance with the Social Security Administration regulations. Controlling weight will be given to a treating physician's opinion on the issue of the nature and severity of a claimant's impairments if that opinion is well-supported by medically acceptable clinical and diagnostic techniques and it is not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2). Accordingly, the ALJ gave minimal weight to the opinion of Dr. Ye after determining there was a lack of objective clinical findings to support his assessment and that his opinion was contradicted by other evidence, such as Dr. Cohen's opinion. AR, 33. Moreover, Dr. Ye's opinion was contradicted by Plaintiff's own self-reported activities such as attending classes four days a week.

Plaintiff asserts that Dr. Shinefield's[1] notes support Dr. Ye's conclusions; however, the ALJ correctly looked to Dr. Ye's own clinical findings to determine whether they were consistent

---

[1] Plaintiff would have the Court believe that Dr. Ye was her primary therapist; however, the record indicates that Dr. Shinefield was her primary therapist. AR, 425-28.

with his own evaluation of Plaintiff.  Dr. Ye's Core Assessment Inquiry, dated October 22, 2004,
showed that Plaintiff was independent in a variety of circumstances such as personal
grooming/hygiene, household maintenance, transportation, safety and understanding, and had a
fair perception of her conditions.  AR, 436-37.  Plaintiff demonstrated she was capable of thought
process, memory, and concentration.  *Id.*  Although Plaintiff endured stress, Dr. Ye found she was
functioning fairly well.  *Id.*  Therefore, the ALJ's conclusion that Dr. Ye's assessment that
Plaintiff was unable to work contradicted his own clinical findings was proper.

Additionally, contrary to Plaintiff's allegations, the ALJ did not ignore Dr. O'Connor's
findings; rather, the ALJ correctly accorded little weight to Dr. O'Connor's findings.  The Court
finds the ALJ had several sound reasons for doing so.  First, the determination of whether a
claimaint is disabled is reserved to the Commissioner.  20 C.F.R. 404.1527(e).  Further, a
statement by a doctor that a claimiant such as Plaintiff is disabled does not mean the
Commissioner, in making his decision about benefits, must hold the statement to be true.  20
C.F.R. 404.1527(e)(1).  Therefore, the ALJ was correct in upholding the Commissioner's
determination not to rely merely on Dr. O'Connor's diagnosis of Plaintiff.  Second, the ALJ found
Dr. O'Connor's assessment that Plaintiff was unable to do work contradicted by the fact that
Plaintiff was able to be enrolled in college courses as a double major.  AR, 33.  Lastly, Dr.
O'Connor's evaluation of Plaintiff was not supported by any clinical evidence.  *Id.*  The Court,
therefore, holds that the ALJ gave proper weight to the medical evidence in Plaintiff's record
when determining his decision.

### 3.    The ALJ Failed to Develop the Record Properly.

Plaintiff argues that the ALJ failed to develop the record properly.  First, Plaintiff alleges that, at the supplemental hearing, the ALJ failed to ensure that Plaintiff made an informed choice concerning her representation.  The Court disagrees.  Plaintiff cites to the Hearings, Appeals and Litigation Law Manual ("HALLEX"), which states that, generally, an opening statement of the ALJ should ask an unrepresented claimant questions such as whether the claimant is capable of making an informed decision and that the claimant understands what it means to be unrepresented as well as other options available to the claimant.  *See* HALLEX, I-2-652(A).  Plaintiff, however, appears to have overlooked the first section of HALLEX, I-2-652(A), which states, in relevant part:

> "In supplemental hearings, the ALJ need only identify the case, state the purpose of the supplemental hearing, and describe the issue(s) to be decided."

Because the hearing for the vocational expert's testimony was a supplemental hearing, the ALJ was under no obligation to question Plaintiff about her choice to proceed without attorney representation.

Furthermore, Plaintiff initially had representation in this matter where she was questioned. AR, 484.  At the first hearing on February 4, 2005, the ALJ properly presented an opening statement.  Sometime after the hearing, Plaintiff requested her attorney to withdraw his representation, which he did.  AR, 105.  When the supplemental hearing was conducted, Plaintiff confirmed that she intended to represent herself.  AR, 521.  The sole purpose of the supplemental hearing was to solicit vocational evidence and because the ALJ had no questions for Plaintiff, the ALJ only questioned the vocational expert.  AR. 523.  At the conclusion of the ALJ's questioning, Plaintiff proceeded with her questioning of the vocational expert.  AR, 530-32.  Because Plaintiff

knew she could have representation, as she had counsel during her initial hearing, it was unnecessary for the ALJ to remind Plaintiff of her right to counsel if she so desired.

Next, Plaintiff asserts that the ALJ failed to develop the record fully because he did not call the medical expert back to review the additional medical evidence submitted after the close of the hearing. Plaintiff relies on HALLEX I-2-539(A), which requires that before the medical expert testify, he must have examined all medical evidence of record. *See* HALLEX, I-2-539(A). The Court finds that the ALJ was under no obligation to recall the medical expert. All that was required of the ALJ was to mark the evidence with exhibit numbers, add the exhibits to the List of Exhibits under the heading "Received Subsequent to the Hearing," place the exhibits in the file, and reopen the record with a statement on the hearing cassette tape. *See* HALLEX I-2-720(B). Dr. Cohen needed only to examine all medical evidence in the record at the time of the hearing, not all medical evidence that comes in at any point before, during, or after the hearing.[2]

Lastly, Plaintiff claims that this action must be remanded due to new and material evidence. Plaintiff, however, has failed to provide such evidence. Plaintiff points to additional medical evidence submitted on November 3, 2006. The evidence concerns medical reports from two doctors, dated from July 11, 2005 through October 12, 2006, and Plaintiff claims that they

---

[2] The Court is inclined to believe that even if the medical expert reviewed the evidence submitted subsequent to the hearing, he would have concluded no differently. Dr. Argueta's assessment merely states the findings of the mental status examination and resulting diagnosis. Dr. Ye's assessment merely states his diagnosis of Plaintiff's mental status and her ability to sustain work and functional limitations. Furthermore, it would have been unnecessary for the ALJ to bring the medical expert, a psychiatrist, back to review all of the additional evidence when only a small portion of the reports concerned Plaintiff's mental health. Of the twenty-four medical records that were submitted post-hearing, only four of those exhibits relate to patient's mental health; therefore, it was reasonable for the ALJ to review them himself. Upon review of the reports, it is clear that a medical expert was not necessary to interpret the reports' findings. Dr. Argueta and Dr. Ye's evaluations are self-explanatory.

were not available to Plaintiff's former attorney at the time of the Administrative Hearing.

A district court may remand a case if the evidence is new and material, however, the evidence must relate to the time period before the ALJ rendered his decision.  Title 42, U.S.C. § 405(g) states, in relevant part:

> "...The court may...remand the case...but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the Record in a prior proceeding...."

"The evidence must first be 'new' and not merely cumulative of what is already in the record." *Davis v. Bowen*, No. 86-3439, 1987 U.S. Dist. LEXIS 11548, at *7 (D.N.J. Nov. 13, 1987) (internal citations omitted).  Furthermore, evidence is considered "material" if it is "relevant and probative."  *Id.*  There must also be a "reasonable possibility that the new evidence would have changed the outcome of the outcome of the Secretary's determination.  An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied."  *Id.* (internal citations omitted).

The Court finds these additional medical records are not new evidence that raise the possibility of a reversal.  The records are all dated *after* the ALJ made his decision on July 7, 2005.  They do not relate to the period of time considered by the ALJ in rendering his decision.  Furthermore, the records would not have had any impact on the ALJ's decision as the medical assessments post-date the decision.  Therefore, there is no need to remand the case to the ALJ because the evidence is not new and material.

**III.    Conclusion**

Based on the foregoing, the Court affirms the Commissioner's decision denying Plaintiff's application for DIB and SSIB.  An appropriate order accompanies this Opinion.


Date: March 3, 2008                                   /s/ JOEL A. PISANO_____
                                                      United States District Judge